## PEOPLE *v* GLASS

1. CRIMINAL LAW—INDIGENTS—NEW TRIAL—TRANSCRIPTS—DISCRETION.

> Denial of an indigent criminal defendant's motion to obtain at state expense a transcript of his first trial prior to a new trial was improper where the motion was denied on the ground that defense counsel did not file a written brief to support that motion and nothing in the record shows that defense counsel had been directed to file a written brief.

2. CRIMINAL LAW—INDIGENTS—NEW TRIAL—TRANSCRIPTS.

> An indigent criminal defendant was entitled to a transcript of his first trial at state expense prior to a new trial even though he was represented by the same lawyer at both trials before the same judge where the case was tried in Detroit Recorder's Court, one of the busiest criminal courts in the country, there was nearly a five-month interval between the first and second trial, the transcript would have been valuable for discovery and impeachment purposes and could have been used at the second trial to rehabilitate a witness who was challenged on the strength of the examiner's recollection of his testimony at the first trial, there was no concession on the record that the court reporter at the first trial would have read his notes of the first trial to defendant's lawyer, and the court reporters were different at the two trials, because defendant had no

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law § 233.
Right of indigent defendant in criminal case to aid of state as regards new trial or appeal. 55 ALR2d 1072.
Right under the Federal Constitution of indigent defendant in criminal case to aid of state as regards appeal or postconviction remedy—federal cases. 6 L Ed 2d 1295.

adequate alternative method of obtaining the necessary information.

Appeal from Recorder's Court of Detroit, Geraldine Bledsoe Ford, J. Submitted Division 1 December 7, 1971, at Detroit. (Docket No. 11689.) Decided February 25, 1972.

Paul Glass was convicted of attempted armed robbery. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas P. Smith,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, and *Daniel S. Seikaly,* Assistant Defender, for defendant.

Before: LESINSKI, C. J., and LEVIN and O'HARA,* JJ.

LEVIN, J. The defendant, Paul Glass, and his brother, Joe Glass, were charged with armed robbery. MCLA 750.529; MSA 28.797. After a six-day trial, which began on July 17, 1969, the jury was unable to agree on a verdict and a new trial was ordered.

Between the first and second trials, on August 1, 1969, the Glasses, who were indigent and represented by assigned counsel, filed a motion to obtain at state expense a transcript of the testimony of the first

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

trial. The lawyers for the Glasses referred the trial judge to judicial precedents which they claimed supported their motion, but did not file a written brief. The motion was denied on November 17, 1969 because a written brief was not filed.

The second trial began on December 8, 1969. Paul Glass was convicted of attempted armed robbery.[1] This is his appeal. The jury was unable to agree on a verdict concerning Joe Glass; subsequently he pled guilty to an added count of attempted resisting and obstructing an officer in the discharge of his duty.[2]

It does not appear from the record whether the judge directed the Glasses' lawyers to prepare a written brief in support of their motion seeking a transcript of the first trial. There being nothing in the record to show that defense counsel was directed to file a written brief, we could not properly sustain the denial of a transcript of the first trial on that ground.

In *Britt* v *North Carolina*, 404 US 226; 92 S Ct 431; 30 L Ed 2d 400 (1971), the United States Supreme Court ruled that *Griffin* v *Illinois*, 351 US 12; 76 S Ct 585; 100 L Ed 891 (1956), and its progeny, oblige the State to provide an indigent defendant with a transcript of prior proceedings when a transcript is needed for an effective defense at a subsequent trial,[3] but that "in the narrow circum-

---

[1] MCLA 750.92, 750.529; MSA 28.287, 28.797.

[2] MCLA 750.92, 750.479; MSA 28.287, 28.747.

[3] See, also, *Roberts* v *LaVallee*, 389 US 40, 42; 88 S Ct 194; 19 L Ed 2d 41 (1967), where the United States Supreme Court ruled that an indigent defendant was deprived of the equal protection of the laws when the trial court refused to supply him, at state expense, with a transcript of a preliminary hearing.

In a number of jurisdictions indigent defendants have been held entitled to receive, at state expense, transcripts of an earlier trial to assist them in their preparation and defense at a succeeding trial. *People* v *Ballott*, 20 NY2d 600, 604; 286 NYS2d 1, 4; 233 NE2d 103, 105 (1967); *State* v *Eighth Judicial District Court*, 80 Nev 478, 480–481; 396 P2d 680, 681–682 (1964); *People* v *Delafosse*, 36 Ill 2d 327; 223 NE2d 125 (1967).

stances" of the case presented the refusal of a transcript was not violative of that right. The Supreme Court explained that although a defendant who demands a free transcript does not "bear the burden of proving inadequate such alternatives as may be suggested by the state or conjured up by a court in hindsight", in the case there presented "petitioner has conceded that he had available an informal alternative which appears to be substantially equivalent to a transcript".

In *Britt* both trials took place in a small town before the same judge with the same defense counsel and court reporter who, as was conceded, was well known to defense counsel and other local lawyers and would have read back his notes to defense counsel before the second trial had he been asked to do so. The two trials were only a month apart.

The United States Supreme Court declared in *Britt* (404 US at 228; 92 S Ct at 434; 30 L Ed 2d at 404):

"We agree with the dissenters that there would be serious doubts about the decision below if it rested on petitioner's failure to specify how the transcript might have been useful to him. Our cases have consistently recognized the value to a defendant of a transcript of prior proceedings, without requiring a showing of need tailored to the facts of the particular case. As Mr. Justice Douglas makes clear, even in the absence of specific allegations *it can ordinarily be assumed that a transcript of a prior mistrial would be valuable to the defendant in at least two ways: as a discovery device in preparation for trial, and as a tool at the trial itself for the impeachment of prosecution witnesses.*

See, also, *People v Cross,* 386 Mich 237 (1971), affirming 30 Mich App 326 (1971).

See, generally, Note: *Right to Aid in Addition to Counsel for Indigent Criminal Defendants,* 47 Minn L Rev 1054 (1963).

"But the court below did not use the language of 'particularized need.' It rested the decision instead on the second factor in the determination of need, that is, the availability of adequate alternatives to a transcript." (Emphasis supplied.)

In *Britt* the Supreme Court also expressed its doubt that "it would suffice to provide the defendant with *limited access* to the court reporter during the course of the second trial. That approach was aptly rejected as 'too little and too late' in *United States, ex rel Wilson* v *McMann,* 408 F2d 896, 897 (CA 2, 1969)". (Emphasis supplied.)    404 US at 229; 92 S Ct at 434; 30 L Ed 2d at 404.

In this case the Glasses were represented by the same lawyers at both trials,[4] and the same judge presided at both trials.   There the factual similarity to *Britt* ends.   In this case the trials did not take place in a small town but in Detroit Recorder's Court, one of the busiest criminal courts in the nation.   Nearly five months intervened between the first and second trials.   There is no concession on this record that the court reporter at the first trial would, as an accommodation, have been willing to read his notes of the six-day first trial to the Glasses' lawyers, nor do we think that a busy court reporter could be expected to be that generous with his time.   The court reporter at the second trial was a different reporter than the reporter who made a record of the proceedings at the first trial.   It is obvious that at the second trial defense counsel would, at best, have had limited access to the reporter who took the notes at the first trial, to say nothing of the fact that access at that stage would have been "too little and too late".

---

[4] See *United States ex rel Wilson* v *McMann,* 408 F2d 896 (CA 2, 1969).

As the United States Supreme Court observed in *Britt,* it can ordinarily be assumed that a transcript of an earlier trial would be valuable to a defendant for discovery and impeachment purposes. The record of the second trial in this case shows that a transcript of an earlier trial may also be needed to rehabilitate a witness who is challenged at a subsequent trial on the strength of the interrogator's asserted recollection of the testimony given at the earlier trial.

Reversed and remanded for a new trial. Before a new trial commences, Paul Glass shall be furnished with a complete transcript of the first trial.

All concurred.