142 Nev., Advance Opinion 31

IN THE SUPREME COURT OF THE STATE OF NEVADA

LAS VEGAS REVIEW-JOURNAL, INC.;
NOBLE BRIGHAM; BIZUAYEHU
TESFAYE; AND AKIYA DILLON,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
JESSICA K. PETERSON, DISTRICT
JUDGE,
Respondents,
and
NATHAN CHASING HORSE AND THE
STATE OF NEVADA,
Real Parties in Interest.

No. 92008



**FILED**

APR 23 2026


ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Emergency original petition for a writ of mandamus or prohibition challenging district court rulings restricting petitioners from publishing the identity of an alleged victim in a criminal proceeding and excluding petitioners from the courtroom while the alleged victim testified.

*Petition granted.*

McLetchie Law Group PLLC and Margaret A. McLetchie and Leo S. Wolpert, Las Vegas,
for Petitioners.

Steven B. Wolfson, District Attorney, William C. Rowles, Chief Deputy District Attorney, and Bianca Rose Pucci, Deputy District Attorney, Clark County,
for Real Party in Interest the State of Nevada.

Mueller & Associates and Craig Allen Mueller, Las Vegas,
for Real Party in Interest Nathan Chasing Horse.

 

26-18590

Luke A. Busby, Reno,
for Amicus Curiae Our Nevada Judges, Inc.

Randazza Legal Group, PLLC, and Marc J. Randazza, Las Vegas,
for Amici Curiae Nevada Press Association; the ACLU of Nevada
Foundation, Inc.; the Center for American Liberty; and the First
Amendment Lawyers Association.

BEFORE THE SUPREME COURT, HERNDON, C.J., and STIGLICH and
CADISH, JJ.

## OPINION

By the Court, HERNDON, C.J.:

During the underlying trial of a high-profile criminal
defendant, the district court restricted petitioners and other members of the
media from publishing the identity of one of the alleged victims. The district
court also threatened to hold petitioners in contempt if they published the
alleged victim's name. The district court issued these restrictions and
threats even though the alleged victim's name had already been repeatedly
disclosed in public filings and in open court. Petitioners refused to acquiesce
to what they perceived as the district court's wholly ineffective and
blatantly unconstitutional prior restraint. In response, the district court
added substantial insult to injury by having court marshals eject and
exclude petitioners from the courtroom while the alleged victim testified.

Facing ongoing and irremediable harm as the trial neared
completion, petitioners filed an emergency original petition with this court
for a writ vacating these restrictions and preventing the district court from
excluding them from the courtroom on the basis of their refusal to submit

to the restrictions. Because the district court manifestly abused its discretion in imposing an unconstitutional prior restraint and violating petitioners' right of access to the court, we entered an emergency order granting the petition and directed issuance of the requested writ of mandamus. *L.V. Rev.-J., Inc. v. Eighth Jud. Dist. Ct.*, No. 92008, 2026 WL 236659 (Nev. Jan. 28, 2026) (Order Granting Petition for Writ of Mandamus). We now issue this opinion to more fully explain our reasons for granting the emergency petition.[1]

## FACTS

A grand jury indicted real party in interest Nathan Chasing Horse on numerous felonies. From the outset, the case generated intense public interest and media attention. Previously, this court issued a writ of mandamus directing dismissal of the original indictment without prejudice due to improper instructions given in the initial grand jury proceedings. *See Chasing Horse v. Eighth Jud. Dist. Ct.*, 140 Nev., Adv. Op. 63, 555 P.3d 1205, 1209 (2024). The State sought a new indictment against Chasing Horse. During the renewed grand jury proceedings, the real name of "S. Doe," an alleged victim who was a minor at the time of the underlying offenses, was repeatedly revealed. The grand jury ultimately indicted Chasing Horse of kidnapping a minor, open or gross lewdness, multiple counts of sexual assault and sexual assault with a minor under 16 years of age, use of a minor under the age of 14 in producing pornography, and

---

[1]We note that this court previously granted the Nevada Press Association, the American Civil Liberties Union of Nevada Foundation, Inc., the Center for American Liberty, and the First Amendment Lawyers Association leave to file a joint brief as amici curiae. Our Nevada Judges, Inc., subsequently moved for permission to file an amicus curiae brief. The motion is granted. NRAP 29. The proposed amicus curiae brief, provisionally filed on January 28, 2026, is accepted.

possession of child pornography. Upon issuance of the indictment, transcripts of the grand jury proceedings were publicly filed and remained accessible until the district court closed access during trial.

At the commencement of trial, the district court issued an "amended decorum order" regarding media coverage. This order provided, in relevant part, that "[t]he privacy and safety of victims, witnesses, and jurors should be respected at all times. Media personnel are requested out of respect for the alleged sexual assault victims to not disclose their personal identifying information including their full names, without their consent, but rather to refer to them by their initials." Despite this provision being garbed in permissive language, the district court later issued oral pronouncements making clear that it considered the provision a mandatory prohibition against publishing S. Doe's name.

At trial, S. Doe's name was repeatedly disclosed, including during opening statements. In fact, an audio-visual recording of the trial reveals that even the district court referred to S. Doe by her real first name on one occasion.[2] When the State announced its intent to call S. Doe as a witness, it said, "We will try our best" not to use her full name, "[b]ut obviously, her name's been revealed in open court and we will reveal it again when we call her to the stand." The district court likewise subsequently conceded, "Her name has been used previously. We are referring to her

_____

[2]Disturbingly, the district court directed the written transcript of this reference to be altered to appear as though the court had referred to S. Doe by her pseudonym rather than her real first name. To the extent the district court was concerned about redisclosing S. Doe's first name in the written transcript, there are better ways to accomplish that objective than fabricating a part of the official court transcript and undermining the public trust in the veracity of court records. For instance, the court could have simply sealed the full transcript and redacted the publicly filed version.

right now as S. Doe and that is on the record. But her name has been disclosed previously."

Nonetheless, the district court requested petitioner Las Vegas Review-Journal and three of its journalists, petitioners Noble Brigham, Bizuayehu Tesfaye, and Akiya Dillon (collectively, the Review-Journal), as well as another member of the media who was present in the courtroom, to agree to refer to this alleged victim as "S. Doe" rather than publish her real name. In support, the district court cited NRS 200.3772, Marsy's Law, and the right to privacy. The State represented that S. Doe supported the district court's restrictions. Although other individuals were present when S. Doe's name was disclosed and when she testified, it does not appear the district court imposed the same restrictions on each of those individuals.

After conferring with its counsel, the Review-Journal informed the district court that it could not agree to the restrictions. The district court responded, "Then I am going to close the courtroom or I will remove your access. Because I am not going to allow this victim to be revictimized by the Las Vegas Review-Journal." The district court added, "You are not getting access and you are not publishing her name. And if you do so, I will hold the Review-Journal in contempt of court." The Review-Journal inquired whether the district court would issue a written order memorializing these rulings. The district court pointed to its "decorum order," instructed marshals to usher the Review-Journal out of the courtroom, and told the Review-Journal to "[w]rit me if you feel necessary." The Review-Journal accepted the invitation by filing an emergency petition for a writ of mandamus or prohibition with this court.

## DISCUSSION

This court has original jurisdiction to issue writs of mandamus and prohibition, and the decision to entertain a petition for such relief is

solely within this court's discretion. *See* Nev. Const. art. 6, § 4; *D.R. Horton, Inc. v. Eighth Jud. Dist. Ct.*, 123 Nev. 468, 475, 168 P.3d 731, 737 (2007). Mandamus is available to control a manifest abuse of discretion or an arbitrary or capricious exercise of discretion. *D.R. Horton*, 123 Nev. at 475, 168 P.3d at 737. A writ of prohibition is utilized to arrest proceedings that exceed the district court's jurisdiction. *Johanson v. Eighth Jud. Dist. Ct.*, 124 Nev. 245, 248, 182 P.3d 94, 96 (2008). Petitioners bear the burden to show that extraordinary relief is warranted, and such relief is proper only when there is no plain, speedy, and adequate remedy at law. *See Pan v. Eighth Jud. Dist. Ct.*, 120 Nev. 222, 224, 228, 88 P.3d 840, 841, 844 (2004).

We exercise our discretion to entertain this petition because the district court's rulings are not independently appealable and, absent our intervention, irreparable injury would otherwise result. *See L.V. Rev.-J. v. Eighth Jud. Dist. Ct.*, 134 Nev. 40, 43, 412 P.3d 23, 26 (2018) ("It is clear that even a short-lived 'gag' order in a case of widespread concern to the community constitutes a substantial prior restraint and causes irreparable injury to First Amendment interests as long as it remains in effect." (quoting *Cap. Cities Media, Inc. v. Toole*, 463 U.S. 1303, 1304 (1983)); *see also Johanson*, 124 Nev. at 249, 182 P.3d at 96 (electing to entertain a writ petition challenging a gag order because a later appeal would not be an adequate or speedy remedy).

The Review-Journal argues that the district court manifestly abused its discretion in several respects, including by issuing an unconstitutional order imposing a prior restraint and violating the Review-Journal's right of access to the court. We agree.

"[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights," *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976), and invoke "a heavy

presumption of unconstitutionality," *Talk of the Town Bookstore v. City of Las Vegas*, 92 Nev. 466, 470, 553 P.2d 959, 961 (1976). The protections against prior restraints "have particular force as applied to reporting of criminal proceedings," *Neb. Press Ass'n*, 427 U.S. at 559, and the proponent of such a restraint bears a nearly insurmountable burden, *see, e.g.*, *L.V. Rev.-J.*, 134 Nev. at 44, 412 P.3d at 26. To show that the restriction is justified, "the interest the prohibition protects must be of the 'highest order.'" *Id.* (quoting *Fla. Star v. B.J.F.*, 491 U.S. 524, 541 (1989)). This court has held that a prior restraint or "gag" order is justified only when "(1) the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest, (2) the order is narrowly drawn, and (3) less restrictive alternatives are not available." *Id.* (quoting *Johanson*, 124 Nev. at 251, 182 P.3d at 98).

Here, in support of its restrictions, the district court cited unspecified provisions of NRS 200.3772 and Marsy's Law. Under NRS 200.3772(1), victims of certain offenses may opt to use a pseudonym in "court records and media releases." Victims must file a form with the investigating law enforcement agency to elect this option, and the agency must substitute the pseudonym in its records and notify the prosecuting attorney. NRS 200.3772(2)-(3). The court is then required to use the pseudonym in all legal proceedings regarding the offense. NRS 200.3772(4). Further, the court is generally prohibited from disclosing the information on the form concerning the victim's actual identity, other than to the defendant or their attorney, who are likewise generally prohibited from disclosing the information. NRS 200.3772(5). Article 1, Section 8A of the Nevada Constitution, known as "Marsy's Law," provides in pertinent part that the victim of a crime has a right "[t]o be treated with fairness and respect for his or her privacy and dignity, and to be free from intimidation,

harassment and abuse, throughout the criminal or juvenile justice process." Nev. Const. art. 1, § 8A(1)(a).

Although the district court referenced NRS 200.3772, there is no evidence in the record that S. Doe availed herself of the provisions of the statute during the underlying investigation. In other words, the district court relied on statutory constraints that were not even implicated in this case. Moreover, by their plain language, the provisions of NRS 200.3772 and Marsy's Law do not restrict the press, much less authorize a prior restraint on the press. If they did, they would run afoul of the First Amendment, as well as Article 1, Section 9 of the Nevada Constitution. *See Foley v. Kennedy*, 110 Nev. 1295, 1300, 885 P.2d 583, 586 (1994) ("[S]tatutes must be construed consistent with the constitution and, where necessary, in a manner supportive of their constitutionality."); *see also Fla. Star*, 491 U.S. at 541 (holding that a statute prohibiting the publication of the name of the victim of a sexual offense did not comport with the First Amendment); *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 106 (1979) (concluding that a statute making it a crime for a newspaper to publish, without court approval, the name of any youth charged as a juvenile offender violated the First Amendment); *S.O.C., Inc. v. Mirage Casino-Hotel*, 117 Nev. 403, 415, 22 P.3d 243, 251 (2001) (explaining that the protections accorded under Article 1, Section 9 of the Nevada Constitution are coextensive with the First Amendment).

The district court also based its restrictions on S. Doe's generalized right to privacy. Her name, however, already appeared throughout publicly filed transcripts of the grand jury proceedings and was already disclosed in open court at trial. Although we are sympathetic to S. Doe's privacy concerns, the prior disclosure of her name diminishes the interest in protecting her anonymity. Under these circumstances, the

district court's restrictions could not, as a matter of law, serve an interest of the highest order. *See L.V. Rev.-J.*, 134 Nev. at 45, 412 P.3d at 27; *see also Okla. Publ'g Co. v. Dist. Ct.*, 430 U.S. 308 (1977) (vacating a state court injunction prohibiting the media from publishing the name and photograph of an 11-year-old boy being tried in juvenile court where the judge had permitted reporters and other members of the public to attend a hearing in the case, notwithstanding a statute closing such trials to the public); *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494-95 (1975) (holding that a state could not impose sanctions for the accurate publication of the name of a rape victim that the reporter learned from an examination of publicly available indictments, explaining "the interests in privacy fade when the information involved already appears on the public record"); *Doe v. City of New York*, 15 F.3d 264, 268 (2d Cir. 1994) ("Certainly, there is no question that an individual cannot expect to have a constitutionally protected privacy interest in matters of public record."); *McNally v. Pulitzer Publ'g Co.*, 532 F.2d 69, 77-78 (8th Cir. 1976) (holding that there was no harm to any constitutional right of privacy when the information claimed to be private was already a matter of public record).

In addition, although other individuals were present when S. Doe's name was disclosed and when she testified, it does not appear that the district court imposed the same restrictions on each of those individuals. Thus, the district court's measures did not advance its stated goal of protecting her privacy. *See L.V. Rev.-J.*, 134 Nev. at 45-46, 412 P.3d at 27-28 ("When a State attempts the extraordinary measure of punishing truthful publication in the name of privacy, it must demonstrate its commitment to advancing this interest by applying its prohibition evenhandedly, to the smalltime disseminator as well as the media giant." (quoting *Fla. Star*, 491 U.S. at 540)). We therefore conclude that the district

SUPREME COURT
OF
NEVADA

(O) 1947A

9

court manifestly abused its discretion by imposing an unjustified prior restraint.

The district court's exclusion of the Review-Journal from the courtroom likewise does not withstand scrutiny. "[T]he right to attend criminal trials is implicit in the guarantees of the First Amendment; without the freedom to attend such trials, which people have exercised for centuries, important aspects of freedom of speech and 'of the press could be eviscerated.'" *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980) (quoting *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972)). This court fiercely guards the longstanding presumption that the press has an integral right to access criminal trials. *Stephens Media, LLC v. Eighth Jud. Dist. Ct.*, 125 Nev. 849, 859, 221 P.3d 1240, 1247 (2009). Although not absolute, the presumption of openness "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* (quoting *Press-Enter. Co. v. Super. Ct. of Cal.*, 464 U.S. 501, 510 (1984)).

Here, the district court ejected and excluded the Review-Journal from the courtroom due to its refusal to agree not to publish S. Doe's name. As detailed above, this restriction constitutes an unjustified prior restraint. There is no overriding interest in enforcing such an order. Further, given the prior disclosure of S. Doe's identity, the district court's exclusion of the Review-Journal was not narrowly tailored to serve any interest in protecting her anonymity. *See Globe Newspaper Co. v. Super. Ct. for Norfolk Cnty.*, 457 U.S. 596, 607-10 (1982) (concluding that a statute barring press and public access to criminal sex-offense trials during the testimony of minor victims was not narrowly tailored toward a compelling interest with respect to minors whose names were already in the public record). Instead, the exclusion served only to violate the Review-Journal's

right of access and punish it for not submitting to an unconstitutional restraint.

## CONCLUSION

The district court manifestly abused its discretion by imposing an unconstitutional prior restraint and violating the Review-Journal's right of access to the court. Writ relief is thus warranted. Accordingly, as previously directed in our emergency order, the Review-Journal's petition for a writ of mandamus is granted.

_____, C.J.
Herndon

We concur:

_____, J.
Stiglich

_____, J.
Cadish